Robert V. LaCombe, Plaintiff-Appellant,†

Federated Mutual Insurance Company, Subrogated-Plaintiff-Co-Appellant,

Medicare Parts A & B, Subrogated-Plaintiff,

v.

Aurora Medical Group, Inc., Charlene Karls, and The Medical Protective Company, Defendants-Respondents,

Wisconsin Patients Compensation Fund, Ohio Hospital Insurance Company, ABC Insurance Company, DEF Insurance Company, and GHI Insurance Company, Defendants.

Court of Appeals

*No. 03–2093. Submitted on briefs April 22, 2004.—Decided May 26, 2004.*

2004 WI App 119

(Also reported in 683 N.W.2d 532.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Paul V. Gagliardi* of *Gagliardi, O'Brien, Braden, Olson & Capelli* of Salem,

and *Timothy J. Aiken* and *James C. Gallanis* of *Aiken & Scoptur, S.C.* of Milwaukee.

On behalf of the defendants-respondents *Aurora Medical Group, Inc.*, *Charlene Karls*, and *The Medical Protective Company* and defendant *Ohio Hospital Insurance Company*, the cause was submitted on the brief of *Michael P. Malone*.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. BROWN, J.   Robert V. LaCombe appeals from a judgment dismissing his medical malpractice complaint against Aurora Medical Group, Inc., Charlene Karls, D.O, and The Medical Protective Company (collectively, "Dr. Karls"). LaCombe argues that the trial court erred in denying his postverdict motion for a new trial. He claims that the jury's verdict was inconsistent because the special verdict questions regarding liability and damages were improperly formulated so as to be confusing and likewise inconsistent and, as a result, he is entitled to a new trial. We hold that because LaCombe is challenging the wording of the special verdict questions and because he failed to make a timely objection to the special verdict questions before the trial court, he has waived the issue. We therefore affirm the trial court's denial of LaCombe's postverdict motion for a new trial and dismissal of his complaint.

¶ 2.   The following facts are pertinent to this appeal. In October 2000, LaCombe filed a medical malpractice action against Dr. Karls, alleging that Dr. Karls negligently failed to perform appropriate diagnostic testing and/or obtain appropriate orthopedic consultation. He claimed that Dr. Karls' negligence caused serious injuries, including, among other permanent injuries, incomplete paraplegia due to Cauda Equina

Syndrome. LaCombe timely requested a special verdict form wherein the jury was directed to answer the following questions:

> Question No. 1: Was [Dr. Karls] negligent with regard to her care and treatment of [LaCombe] in December 1997?
>
> Answer: _____
> (Yes or No)
>
> Question No. 2: If your answer to Question No. 1 is "yes," then answer this question: Was such negligence a cause of the permanent injuries that are a residual of Cauda Equina Syndrome?
>
> Answer: _____
> (Yes or No)
>
> Question No. 3: What sum of money will fairly and reasonably compensate [LaCombe] for damages sustained as natural and probable consequence of Cauda Equina Syndrome . . .?

¶ 3. Before submitting the case to the jury, the trial court held jury instruction and verdict conferences. At the first conference that is part of the record, the trial court inserted prefaces to the second and third special verdict questions LaCombe submitted:

> THE COURT: . . . . You need prefaces to number two and perhaps to number three. Preface to number one, answer this only if you answer question number one "yes" and question number three should be regardless of how you answered question one or two, whatever it happens to be.

The record does not reveal any objection by LaCombe to these changes to the special verdict form. Following

several discussions concerning the wording and the format of the special verdict form and the jury instructions that are not relevant to this appeal, the trial court submitted the following special verdict form to the jury:

> Question No. 1: Was [Dr. Karls] negligent with regard to her care and treatment of [LaCombe] between December 12 and December 31, 1997?
>
> Answer: _____
> (Yes or No)
>
> Question No. 2: If your answer to Question No. 1 is "yes", then answer this question: Was such negligence a substantial factor in causing injury to [LaCombe]?
>
> Answer: _____
> (Yes or No)
>
> Regardless of how you answer Questions 1 and 2, answer these questions:
>
> Question No. 3: What sum of money will fairly and reasonably compensate [LaCombe], for damages sustained as a natural and probable consequence of his injuries . . .?

When the trial court instructed the jury, it included the following pertinent instructions:

> [LaCombe] sustained injuries before the treatment by Dr. Karls. Such injuries have caused and could in the future cause [LaCombe] to endure pain and suffering and incur some disability. In answering these questions on damages, you will entirely exclude from your consideration all damages which resulted from the original injury; you will consider only the damages LaCombe sustained as a result of the negligent treatment, if any, by Dr. Karls.

> It will, therefore, be necessary for you to distinguish and separate, first, the natural results in damages that flow from [LaCombe's] original injuries or disease and, second, those that flow from [Karls'] negligent treatment and allow [LaCombe] only the damages naturally result[ing] from the negligent treatment by Dr. Karls, if any.

The jury returned a verdict: (1) finding that Dr. Karls was negligent in treating LaCombe, (2) finding that Dr. Karls' negligence was not a substantial factor in causing injury to LaCombe, and (3) awarding over $900,000 in damages to LaCombe.

¶ 4. LaCombe filed a postverdict motion asking the court to change the answer to the causation question from "No" to "Yes" or to order a new trial on the issue of causation on the grounds that the jury's verdict was fatally inconsistent. He maintained that once the jury made a determination that Dr. Karls' negligence did not cause the injuries LaCombe suffered, the damages question should have been answered zero or, in the alternative, that given its award of substantial damages, the only appropriate answer to the causation question was "Yes." The trial court denied LaCombe's motion, reasoning that because the jury found that Dr. Karls had been negligent in her treatment of LaCombe, "it [was] entirely consistent for the jury to have answered the damage question." The court entered judgment in favor of Dr. Karls and dismissed LaCombe's complaint. LaCombe appeals.

■■■

¶ 5. As expressed at the outset, the parties dispute whether LaCombe has waived his objections to the special verdict questions by failing to raise them at the jury instruction and verdict conferences. Pursuant to

WIS. STAT. § 805.13(3) (2001–02),[1] the failure to object at the jury instruction or verdict conferences, "constitutes a waiver of any error in the proposed instructions or verdict." *Id.*; *Gosse v. Navistar Int'l Transp. Corp.*, 2000 WI App 8, ¶ 19, 232 Wis. 2d 163, 605 N.W.2d 896. We have no power to review waived error of this sort. *Gosse*, 232 Wis. 2d 163, ¶ 19 (citing *State v. Schumacher*, 144 Wis. 2d 388, 408–09, 424 N.W.2d 672 (1988)). Whether the failure to object to the wording of the special verdict form in the trial court constitutes waiver is a legal question, *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980) (holding that waiver is a question of law) (*superceded by* WIS. STAT. § 895.52 on other grounds), which the court decides de novo. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251 (1977).

¶ 6. LaCombe argues that it was entirely appropriate for him to raise his objections to the jury's inconsistent verdict in a postverdict motion. He maintains that WIS. STAT. § 805.13(3) applies only when the complaining party is challenging the wording of the verdict form itself and that his claim of error goes to the substance of the jury's verdict. While LaCombe correctly describes the waiver rule as it concerns verdict questions and jury instructions, he mischaracterizes the nature of his own objections.

¶ 7. *Seif v. Turowski*, 49 Wis. 2d 15, 181 N.W.2d 388 (1970); *Westfall v. Kottke*, 110 Wis. 2d 86, 92–94, 328 N.W.2d 481 (1983); *City of West Allis v. WEPCO*, 2001 WI App 226, 248 Wis. 2d 10, 635 N.W.2d 873, *review denied*, 2002 WI 23, 250 Wis. 2d 556, 643 N.W.2d 93 (WI Jan. 29, 2002) (No. 99–2944), are three ex-

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

amples of cases where the complaining party's objection related to the result of the jury's verdict and the court permitted the complaining party to raise its objection to the alleged inconsistent answers in a postverdict motion. In both *Seif* and *Westfall*, the jury did not follow the trial court's instructions and, as a result, rendered an inconsistent verdict. *Seif*, 49 Wis. 2d at 19; *Westfall*, 110 Wis. 2d at 92–94. In *Seif*, the jury found the defendant was negligent, that his negligence was not a cause of the accident at issue, but then contrary to jury instructions, attributed ten percent of the causal negligence to him. *Seif*, 49 Wis. 2d at 19. The court held that this conclusion clearly fell within the definition of an inconsistent verdict. *Id.* at 20. The court refused to apply the waiver rule to the defendant's objection, reasoning "[i]n those cases where, although the inconsistency is apparent upon the face of the verdict, the resolution of the inconsistency requires an extensive review of the evidence, the matter may well be considered more judiciously in motions after verdict." *Id.* at 21.

¶ 8.  In a similar vein, in *Westfall*, the jury was instructed not to answer a comparative negligence question unless it first found that more than one person was causally negligent. *Westfall*, 110 Wis. 2d at 93. Although the jury found only one person to be causally negligent, it then answered the comparative negligence question, apportioning the negligence between two people. *Id.* at 91. Our supreme court held that, in such cases, if the inconsistent verdict is not rectified by resubmission to the jury with instructions to correct its error, a new trial is required. *Id.* at 100.

¶ 9.  The holdings in *Seif* and *Westfall* make perfect sense. The juries' answers ran directly contrary to the instructions given by the trial court and thus it was

their responses that created the alleged inconsistency. As the court in *Seif* noted, "the defect in question here is not merely in the form of the verdict but goes to its substance." *Seif*, 49 Wis. 2d at 22. As a result, without knowing the juries' answers, the complaining parties had no grounds or reason to object to the verdict form at the jury instruction and verdict conference. It was therefore logical for the *Seif* and *Westfall* courts to refuse to apply waiver.

¶ 10.  In *City of West Allis*, we applied the holdings of *Seif* and *Westfall* and held that an objection based upon a five-sixths rule violation raised for the first time in motions after verdict, rather than at the time of the jury return, was not waived. *City of West Allis*, 248 Wis. 2d 10, ¶ 34. Plainly, an objection to a five-sixths rule violation concerns the result of the verdict and thus application of the *Seif* and *Westfall* nonwaiver rule was appropriate.

¶ 11.  *Westfall*, *Seif* and *City of West Allis*, however, are not applicable here. In this case, LaCombe's challenge goes directly to the heart of the language the trial court inserted into the special verdict questions. The jury simply followed the instructions as outlined on the form. The jury answered question one, the negligence question, "Yes," and then, as the verdict form instructed, answered question two, the question concerning causation. After responding, "No" to question two, the jury proceeded, as directed, to answer question three, the damages question. Thus, unlike *Westfall*, *Seif* and *City of West Allis*, LaCombe's claim of error, that the jury answered the damages question even though it failed to find against Dr. Karls on the issue of causation, lies with the wording of the special verdict questions themselves not with the substance of the result. Unlike the claims in *Westfall*, *Seif* and *City of West Allis*,

LaCombe's claim of error would have been evident at the jury instruction and verdict conferences. LaCombe could have requested that the trial court direct the jury to answer the damages question only after affirmatively answering the negligence and causation questions, but he chose not to do so.

██

¶ 12.   In his reply brief, LaCombe zeroes in on a statement concerning the application of the *Seif* and *Westfall* nonwaiver rule:   "Had the questions been answered differently by the jury, no violation would have occurred." *City of West Allis*, 248 Wis. 2d 10, ¶ 34. He reasons that the same situation is present here—if the jury had answered the questions differently, there would be no inconsistent verdict. Our statement, however, must be read in the context in which it was written:

> WEPCO objected not to the *wording* of the verdict, but to the *result* of the verdict after the various dissents were considered. The five-sixths rule violation was not a result of the wording of the verdict questions themselves. *Had the questions been answered differently by the jury, no violation would have occurred.* Consequently, the facts here fall squarely within the *Seif* and *Westfall* rule . . . .

*City of West Allis*, 248 Wis. 2d 10, ¶ 34 (third emphasis added). Thus, in keeping with *Seif* and *Westfall*, the core teaching of *City of West Allis* is that a party is not held to waiver where the potentially inconsistent verdict is produced by the substance of the jury's verdict as opposed to the wording of the verdict. As explained, this is not the situation here.

¶ 13.   We find support for our conclusion in *Gosse*, a case written after *Seif* and *Westfall*, but prior to *City of West Allis*. There, the jury ruled against a consumer

who had brought an action against a manufacturer of his new truck, claiming that his truck was a "lemon" under Wisconsin's lemon law statute. *Gosse*, 232 Wis. 2d 163, ¶¶ 1–2. On appeal, the consumer, who did not raise his objection until a motion after verdict, argued that the jury verdict was inconsistent and thus was grounds for a new trial. *Id.*, ¶¶ 18, 21. The jury had answered, "Yes" to the first question on the special verdict form, which asked: "Does the vibration complained of by [the consumer] constitute a nonconformity as that term is defined [in the lemon law]?" *Id.*, ¶ 7. The jury then answered, "No" to the second question, which asked: "Does said nonconformity substantially impair the use, safety or value of the truck?" *Id.* The consumer argued that these two questions were repetitive because, by definition, a "nonconformity" substantially impairs the use, value or safety of a motor vehicle, as the trial court explained in its jury instructions. *Id.*, ¶ 18. Thus, according to the consumer, by answering "Yes" to question one and "No" to question two, the jury had rendered an inconsistent result. *Id.*

¶ 14.  We concluded that the consumer had waived his objection by not raising it at the jury instruction and verdict conference. *Id.*, ¶ 21 (citing Wis. Stat. § 805.13(3)). In doing so, we rejected the consumer's attempt to rely on the nonwaiver rule articulated in *Westfall*. *Gosse*, 232 Wis. 2d 163, ¶ 21. We reasoned that unlike *Westfall*, the consumer's claim of error lay not with the jury's verdict, but rather with verdict questions themselves; the jury had simply followed the instructions given. *Gosse*, 232 Wis. 2d 163, ¶ 21.

[4]
¶ 15.  A similar fate must befall LaCombe's claim of error. As is evidenced by our discussion here and in *Gosse*, the *Seif* and *Westfall* nonwaiver rule applies only

where the complaining party objects to the result of the verdict. Here, like the consumer in *Gosse*, LaCombe's challenge to the special verdict questions lies in the wording of the instructions and not with the substance of the verdict. As such, the claimed error would have been apparent at the jury instruction and verdict conferences. Because LaCombe did not object to the wording of the questions on the verdict form at the conferences, he, like the consumer in *Gosse*, has waived his claim of error. *See* Wis. Stat. § 805.13(3). To hold otherwise would be to render § 805.13(3), which specifically requires parties to raise such concerns at the jury instruction and verdict conferences, meaningless.

¶ 16.    Finally, LaCombe contends that *Runjo v. St. Paul Fire & Marine Insurance Co.*, 197 Wis. 2d 594, 541 N.W.2d 173 (Ct. App. 1995), dictates that we reach the merits of this case. There, the trial court directed the jury to answer the damages questions regardless of how it answered the liability questions. *Id.* at 598. On appeal, we reversed the trial court, holding that the verdict questions and jury instructions regarding damages were improperly formulated so as to be confusing and inconsistent and a new trial was warranted. *Id.* at 596. However, Runjo had objected to the form of the verdict questions and jury instructions before they were submitted to the jury. *Id.* at 597–98. Therefore, Runjo had preserved his objection for appeal and the question of waiver did not even arise. *See* Wis. Stat. § 805.13(3). Because LaCombe did not make a timely objection to the special verdict questions, *Runjo* is of no assistance to him.

¶ 17.   Since we conclude LaCombe waived the issue, we need not reach the merits of LaCombe's claim.[2] *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed). Accordingly, we affirm the judgment dismissing LaCombe's action.

*By the Court.*—Judgment affirmed.

---

[2] We also take a moment to point out certain deficiencies in LaCombe's briefs. In his briefs, LaCombe fails to stake out a position on oral argument or on publication and his case citations in his table of authorities fail to distinguish between supreme court and court of appeals decisions. Such failures are violations of WIS. STAT. § 809.19 of the rules of appellate procedure.