COURT OF APPEALS
DECISION
DATED AND FILED

December 15, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2019AP2067**

**STATE OF WISCONSIN**

Cir. Ct. No.  2017CV154

**IN COURT OF APPEALS
DISTRICT III**

---

GARTNER PROPERTIES, LLC,

   PLAINTIFF-APPELLANT,

V.

HUDSON BUSINESS PARK, LLC A/K/A HUDSON BUSINESS CENTER,

   DEFENDANT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for St. Croix County: SCOTT R. NEEDHAM, Judge.  *Affirmed in part; reversed in part.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Gartner Properties, LLC, ("Gartner") appeals a judgment, entered following a bench trial, that terminated Gartner's option to

purchase property owned by Hudson Business Park, LLC ("HBP"), granted HBP a judgment of eviction, denied Gartner's claim for damages, and awarded damages to HBP. Gartner argues the circuit court erred by: (1) concluding Gartner was not entitled to specific performance of its option to purchase HBP's property; (2) concluding Gartner had no right to exercise the option a second time; (3) issuing a declaratory ruling that Gregory Gartner—a nonparty—was not entitled to a potential $200,000 payment under the terms of a lease between Gartner and HBP; and (4) ordering Gartner to reimburse HBP for $8,655.12 in maintenance expenses.

¶2      We conclude the circuit court properly determined that Gartner was not entitled to specific performance of its option to purchase HBP's property, and that Gartner had no right to exercise the option a second time. We therefore affirm the court's judgment as to those issues. The court erred, however, by declaring that Gregory Gartner was not entitled to the potential $200,000 payment under the terms of the parties' lease, and by ordering Gartner to pay HBP maintenance expenses. We therefore reverse those portions of the court's judgment.

## BACKGROUND

¶3      In August 2012, HBP purchased a 147,000 square foot commercial warehouse facility in Hudson, Wisconsin ("the Property") on a land contract. Shortly after HBP's purchase, Gartner Studios, Inc. ("Studios") expressed an interest in renting the Property from HBP. HBP and Studios subsequently negotiated the terms of a lease agreement for the Property, and real estate agent Michael Lynskey represented Studios during those negotiations. Lynskey hired real estate attorney Baiers Heeren to draft a lease agreement, which HBP and Studios executed on September 21, 2012.

¶4      Under the lease, Studios was required to pay base rent of $3.25 per square foot, which totaled $477,750 per year.  Article VI of the lease required Studios to timely pay HBP monthly operating costs, which included real estate taxes, special assessments, insurance premiums, water and sewer charges, and expenses for lawn care, snow removal, lighting, and trash removal.  The lease specified that HBP and Studios were each responsible for various maintenance expenses.

¶5      Article VIII of the lease provided Studios with an option to purchase the Property for $4.5 million.  Studios had the right to exercise that option during a 365-day window that commenced three years after HBP paid off its land contract. The lease provided that if Studios chose to exercise its option to purchase, §§ 8.7 through 8.15 of the lease would "constitute the purchase agreement by and between Landlord and Tenant for the sale and purchase of the option property."  (Formatting altered.)   We therefore refer to those sections as "the purchase agreement" throughout the remainder of this opinion.

¶6      Within twenty days of Studios' exercise of the option, § 8.12(i) of the purchase agreement required HBP to order "Title Evidence," which was defined to include three items:  (1) a title commitment from a title company mutually agreed upon by the parties, which "delet[ed] standard exceptions"; (2) "a current survey prepared by a registered land surveyor and complying with Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys (2005)"; and (3) "UCC searches against Landlord."  Section 8.12(ii), in turn, provided in relevant part:

> Within 15 days after receiving the Title Evidence, Tenant will make written objections ("Objections") to the form and/or contents of the Title Evidence, [a]ny matter shown on such Title Evidence and not objected to by Tenant within the foregoing 15-day period, shall be a "Permitted Encumbrance" hereunder, Landlord will have 30 days after

receipt of the Objections to cure the Objections, during which period the Closing will be postponed, if necessary.

¶7 Section 8.9 of the purchase agreement required the closing to occur within 120 days after Studios exercised its option to purchase the Property. Section 8.15 provided:

If Tenant defaults under this Article VIII, following the exercise of the Option Landlord shall have the right to terminate the purchase agreement for the Option Property in accordance with the applicable law. If Tenant fails to cure such default within any applicable cure period, the purchase agreement relating to the Option Property will terminate, time being of the essence of the purchase agreement.

¶8 Finally, § 8.4 of the lease—entitled "Failure to Exercise Option; Payment from Landlord"—stated:

In the event Tenant does not exercise the option as set forth herein within the time and in the manner provided herein this option to purchase shall terminate; Tenant shall have no other or further interest in the Option Property; provided however, that Landlord shall pay to Greg Gartner[1] $200,000.00 upon the sale of any portion of the Option Property (including any sale to Tenant whether or not pursuant to the exercise of the Option), if Landlord sells any portion of the Option Property during the Term (including any extensions thereof).[2]

¶9 Studios and HBP executed an amendment to the lease on January 31, 2014. Among other things, the amendment required Studios to timely pay the Property's real estate taxes directly to St. Croix County.

---

[1] It is undisputed that the "Greg Gartner" referenced in § 8.4 of the lease is Gregory Gartner. At trial, Gregory Gartner testified that he owned 100 percent of Studios prior to 2017, and at the time of trial he owned 30 percent of Studios and 100 percent of Gartner.

[2] The lease defined the "Term" to mean "[s]even (7) years ending on November 30, 2019 with an option to extend for an additional five (5) years."

4

¶10    On January 1, 2016, Studios assigned its interest in the lease to Gartner.  On the same day, Gartner subleased the property back to Studios.  The sublease was a triple-net lease, under which Studios was responsible for, as relevant here, all maintenance expenses associated with the Property.  The sublease did not address the fact that HBP was also required to pay certain maintenance expenses under its lease with Gartner.

¶11    HBP paid off its land contract and received a deed to the Property on February 27, 2013.  The one-year period during which Gartner could exercise its option to purchase the Property therefore ran from February 27, 2016, through February 27, 2017.  Gartner was interested in exercising the option so that it could "flip" the Property by selling it to a third-party buyer.  Thus, on April 26, 2016, prior to exercising its option to purchase, Gartner entered into a listing contract with Lynskey to sell the Property.

¶12    On May 9, 2016, Gartner received a letter of intent from STORE Capital Corporation to purchase the Property for $8.82 million.  On May 12, 2016, Gartner's general counsel, Matthew Resch, notified HBP's president, Thomas Elbert, that Gartner was exercising its option to purchase the Property.  The notice requested a closing date of June 15, 2016.  HBP accepted Gartner's notice of its intent to exercise the option.

¶13    As noted above, § 8.12(i) of the purchase agreement required HBP to order title evidence within twenty days after Gartner exercised its option to purchase.  HBP did not order the required title evidence within that time frame. Elbert testified at trial, however, that Gartner never raised any issue regarding the lack of title evidence before the scheduled June 15, 2016 closing.  Elbert further testified that prior to the scheduled closing date, he repeatedly attempted to contact

Resch to confirm the closing, but Resch never responded. In the interim, Gartner's deal to sell the Property to STORE Capital fell through. On June 14, 2016, Elbert received a voicemail from Resch indicating that the closing would not occur the following day, and that Resch would update Elbert regarding a new closing date.

¶14 HBP provided Gartner with a title commitment in July 2016. The title commitment, however, did not delete the standard exceptions, as required by § 8.12(i) of the purchase agreement. In addition, HBP did not provide a current ALTA survey or UCC searches against HBP. Again, though, Elbert testified that Gartner did not raise any issue regarding the title evidence HBP had provided.

¶15 The purchase agreement required the option transaction to close within 120 days after Gartner exercised the option—in other words, by September 9, 2016. No closing occurred within that 120-day window. Gartner never contacted HBP after June 15, 2016, to request a new closing date. There was no agreement between the parties to extend the time to close on Gartner's purchase of the Property.

¶16 On or about September 21, 2016, HBP's attorney, Leo Schumacher, contacted Resch and asserted that Gartner's failure to timely close was a breach of the purchase agreement. During that conversation, Resch never alleged that Gartner's failure to close was caused by HBP's failure to provide adequate title evidence. Schumacher spoke with Resch again on October 17, 2016, and reaffirmed that, in his opinion, Gartner had lost its right to exercise its option to purchase the Property by failing to timely close. Again, Resch did not raise any issue during that conversation regarding HBP's failure to provide adequate title evidence.

¶17 On October 24, 2016, Schumacher notified Resch via email that HBP was terminating the purchase agreement based on Gartner's failure to timely close the transaction. In a letter to Elbert dated November 14, 2016, Resch asserted for

the first time that HBP had "failed to timely perform under the Purchase Agreement" by not providing the required title evidence, and that HBP's failure to do so "allow[ed] Gartner to extend the closing date."

¶18    On February 24, 2017, Gartner provided HBP with a second notice of its intent to exercise the option to purchase. However, § 8.3 of the parties' lease stated: "Tenant shall not have the right to exercise the Option if Tenant is in default under the terms of the Lease." On March 22, 2017, HBP provided Gartner with a notice of default based on Gartner's failure to timely pay the 2016 real estate taxes for the Property. The notice stated Gartner had thirty days to cure its default, but Gartner did not make the required tax payment within that time period.

¶19    On April 6, 2017, Gartner commenced the instant lawsuit against HBP, seeking a declaratory judgment "that Gartner properly exercised its purchase option and … that HBP violated the terms of the lease when it failed to provide" the required title evidence. Gartner also asserted a breach of contract claim based on HBP's failure "to comply with its obligations to provide the required title work and complete the sale of the property to Gartner." As relief, Gartner asked the circuit court to order HBP "to specifically perform its obligations under the option provisions of the lease, and to sell the option property to Gartner for the price established in the lease and its amendment." Gartner also sought damages for HBP's alleged breaches of the lease.

¶20    HBP asserted counterclaims against Gartner for eviction, breach of contract, and for a declaratory judgment "that Gartner failed to comply with the terms of the Purchase Agreement and that Gartner's option to purchase terminated upon its failure to timely close the Purchase Agreement." HBP also filed a small claims eviction action against Gartner, which was later consolidated with this case.

7

¶21    The matter was ultimately tried to the circuit court over four days in February and April 2019. The court issued its written findings of fact, conclusions of law, and judgment on October 14, 2019. The court rejected Gartner's argument that HBP had breached the purchase agreement by failing to timely provide the required title evidence. The court found that any breach by HBP in that regard was not material, and that Gartner had waived any claim regarding the materiality of the breach by failing to raise any issue about the title evidence before HBP terminated the purchase agreement. The court further concluded that Gartner breached the purchase agreement by failing to close on the transaction within 120 days after exercising its option to purchase. Accordingly, the court determined that HBP properly terminated the purchase agreement.

¶22    The circuit court also concluded that Gartner was entitled to exercise its option to purchase only once, and its second notice of exercising the option on February 24, 2017, was therefore ineffective. Alternatively, the court concluded that even if Gartner could theoretically exercise the option a second time, it had no right to do so because it was in default for failing to timely pay real estate taxes on the Property. The court also determined that because of Gartner's default, HBP was entitled to a judgment of eviction against Gartner.

¶23    The circuit court further concluded that Gregory Gartner was not entitled to the $200,000 payment described in § 8.4 of the parties' lease. The court also found that under the sublease between Gartner and Studios, Studios was responsible for paying all maintenance expenses for the Property. The court therefore determined that Gartner owed HBP $8,655.12 for maintenance expenses that HBP had paid between January 1, 2016, and the date of trial. Gartner now appeals.

## STANDARDS OF REVIEW

¶24    Following a bench trial, we accept the circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2017-18).[3]  A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence. *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615.  "When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.  When more than one reasonable inference can be drawn from the credible evidence, we must accept the inference drawn by the circuit court. *Id.*

¶25    This case also requires us to interpret and apply the terms of the parties' contract, which presents a question of law that we review independently. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586.  When interpreting a contract, we generally seek to give effect to the parties' intentions. *Id.*, ¶25. Thus, where the terms of a contract are clear and unambiguous, we simply apply the contractual language as written. *Id.*, ¶26.  However, if the terms of a contract are ambiguous—that is, fairly susceptible to more than one construction—we may consider extrinsic evidence to determine the parties' intent. *Id.*, ¶27.  In addition, ambiguous contract language is construed against the drafter. *Seitzinger v. Community Health Network*, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426.  Whether a contract is ambiguous is a question of law. *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990).

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

**DISCUSSION**

## I. Specific performance of Gartner's option to purchase

¶26   The circuit court determined that Gartner was not entitled to specific performance of its option to purchase the Property. The court reasoned that Gartner had breached the parties' purchase agreement by failing to close within 120 days of exercising the option. The court therefore concluded that HBP properly terminated the purchase agreement.

¶27   On appeal, Gartner does not dispute that it failed to close within 120 days after it exercised the option on May 12, 2016, as required by § 8.9 of the purchase agreement. Gartner therefore breached the unambiguous terms of § 8.9. As such, HBP was entitled to terminate the purchase agreement under § 8.15, which provided that time was of the essence of the purchase agreement, and that Gartner's default gave HBP the right to terminate the agreement. Although § 8.15 further provided that the purchase agreement would terminate if Gartner failed to cure its default "within any applicable cure period," the agreement did not contain any provision granting Gartner the right to cure its failure to timely close or providing a "cure period" during which Gartner could do so. Accordingly, based on the undisputed facts and the purchase agreement's unambiguous terms, the circuit court correctly determined that HBP properly terminated the purchase agreement under § 8.15.

¶28   Gartner argues the circuit court erred because prior to its breach of the purchase agreement, HBP had already breached the agreement by failing to provide the title evidence required by § 8.12(i). As noted above, § 8.12(i) required HBP to order three items of title evidence within twenty days after Gartner exercised the option. Gartner asserts that HBP breached § 8.12(i) by failing to provide two of

those items—namely, a current ALTA survey and UCC searches against HBP. In addition, while Gartner concedes that it received a title commitment for the Property in July 2016—after the twenty-day deadline had elapsed—it contends that document was deficient because it was not issued by a mutually agreed-upon title company and did not delete the standard exceptions, as required by § 8.12(i). Gartner argues it had "no duty to proceed to a timely closing on its option to purchase, and the transaction was rightfully postponed, until HBP first cured its breach and provided proper Title Evidence, or Gartner expressly consented in writing to accept some alternative version of Title Evidence."

¶29     The circuit court found, however, that any failure by HBP to provide the title evidence required by § 8.12(i) of the purchase agreement was not a material breach of that agreement. Whether a party's breach of a contract was material is a question of fact. *See Volvo Trucks N. Am. v. DOT*, 2010 WI 15, ¶50 n.28, 323 Wis. 2d 294, 779 N.W.2d 423. "It is well established that a material breach by one party may excuse subsequent performance by the other." *Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996). However, the breach must be *material*—that is, it must be so serious as to destroy the essential objects of the contract. *Id.*

¶30     Here, the record supports the circuit court's finding that HBP's failure to provide the required title evidence was not a material breach of the purchase agreement. First, there was ample evidence at trial that Gartner's failure to timely close on the option transaction was not caused by any lack of title evidence. Instead, the evidence showed that Gartner cancelled the scheduled June 15, 2016 closing because its deal to sell the property to STORE Capital fell through. Notably, Gregory Gartner conceded at trial that the transaction did not close on June 15, 2016, "because Store Capital went away."

¶31      In addition, other evidence showed that absent a third-party buyer like STORE Capital, Gartner lacked the financial means to purchase the Property. For instance, both Gregory Gartner and Daron Johnson, Gartner's controller, testified that Gartner did not have sufficient cash to buy the Property. Other evidence indicated that Gartner did not formally apply for any loans to secure financing for its purchase of the Property until early 2017, and Johnson testified that Gartner never obtained any such loan. On this record, the circuit court could reasonably find that Gartner's failure to timely close on the option transaction was caused by its own financial inability to complete the purchase, rather than by HBP's failure to furnish the required title evidence.

¶32      Other evidence at trial further indicated that HBP's supplying of the title evidence described in § 8.12(i) of the purchase agreement was not material to the parties' transaction. Gartner's banker, Daniel Raleigh, testified that any lender would have required its own title commitment. Raleigh also testified that a lender would not have required an ALTA survey in order to provide financing for the option transaction. In addition, Lynskey indicated in a July 28, 2016 email that Gartner "never had a need for a survey." Finally, Raleigh testified that the need to perform a UCC search would not delay a closing because the search could be completed in seconds. This evidence further supports a finding that HBP's failure to provide the title evidence within the twenty-day time period set forth in § 8.12(i) did not destroy the essential objects of the purchase agreement.

¶33      Furthermore, the record shows that Gartner did not raise any issue regarding HBP's failure to provide the title evidence until after HBP had terminated the purchase agreement. There is no evidence that Gartner complained to HBP about the lack of title evidence before the scheduled June 15, 2016 closing. In fact, Resch affirmatively testified that he did not do so. When Resch left a voicemail for

Elbert on June 14, 2016, informing him that the closing would not proceed as scheduled, he did not mention the title evidence, much less assert that HBP had improperly failed to provide it and that its failure to do so was the cause of the closing's cancellation. Further, Gartner never provided HBP with fifteen days' notice of any objection to the title evidence that HBP provided in July 2016, as required by § 8.12(ii) of the purchase agreement. Gartner's silence regarding the title evidence continued until November 14, 2016—over two months after the 120-day deadline to close had elapsed, and three weeks after HBP had terminated the purchase agreement based on Gartner's failure to timely close. Gartner's delay in raising any issue about the title evidence supports a finding that it did not view HBP's provision of that evidence as a material part of the purchase agreement.

¶34 In summary, evidence was introduced at trial that HBP's failure to provide the title evidence described in § 8.12(i) of the purchase agreement was not the reason the option transaction failed to close. Furthermore, there was evidence that it was not necessary for HBP to provide that evidence within the specified twenty-day time period in order for a closing to occur. Finally, Gartner's own conduct shows that it was not concerned about HBP's failure to provide the title evidence until after HBP had terminated the purchase agreement. Based on this evidence, the circuit court found that HBP's failure to provide the title evidence was not a material breach of the purchase agreement—in other words, it did not destroy the essential objects of that agreement. The court's finding in that regard is not clearly erroneous.

¶35 Moreover, even when a material breach of contract has occurred, "the non-breaching party may waive the claim of materiality through its actions." *Management Comput. Servs.*, 206 Wis. 2d at 183-84. In this case, the circuit court properly determined that "[b]y its conduct, Gartner waived the title evidence

timeliness requirements of the Purchase Agreement."[4]  Again, the record indicates that Gartner did not raise any issue regarding the lack of title evidence until over two months after the 120-day deadline to close had elapsed and three weeks after HBP had terminated the purchase agreement.  Under these circumstances, Gartner waived any claim that HBP's provision of the title evidence was material to the option transaction.

¶36     Our supreme court's decision in ***Entzminger v. Ford Motor Co.***, 47 Wis. 2d 751, 177 N.W.2d 899 (1970), supports this conclusion.  In ***Entzminger***, a car dealership's contract with Ford Motor Company required the dealership to file monthly orders for cars to be held in stock and sold off the floor to customers.  ***Id.*** at 753.  The dealership failed to file the required monthly orders for four years.  ***Id.*** The dealership later sued Ford, and in the context of that lawsuit, Ford claimed that the dealership had materially breached the parties' contract by failing to file the required monthly orders.  ***Id.*** at 753-54.

¶37     A jury found that the dealership's breaches were not material.  ***Id.***  On appeal, our supreme court concluded there was sufficient evidence to support that finding, in part because the jury "could believe that Ford did not consider these breaches very important or material as Ford allowed [the breaches] to exist … for some years before refusing to perform its part of the contract."  ***Id.*** at 754-55.  The court further concluded that even "[i]f the breaches were material, *such delay waived the materiality*."  ***Id.*** at 755 (emphasis added).  Just as Ford's delay in ***Entzminger*** waived its ability to assert that the dealership's breaches were material, in this case, Gartner's delay in raising any issue regarding HBP's failure to provide

---

[4] Whether a waiver has occurred is a question of law that we review independently. *See* ***LaCombe v. Aurora Med. Grp., Inc.***, 2004 WI App 119, ¶5, 274 Wis. 2d 771, 683 N.W.2d 532.

the title evidence waived its claim that HBP's conduct in that regard was a material breach of the purchase agreement.

¶38 For the reasons explained above, the circuit court's finding that HBP did not materially breach the purchase agreement by failing to provide the required title evidence is not clearly erroneous. In the alternative, the court properly concluded that Gartner waived any claim regarding the materiality of HBP's breach. As such, HBP's failure to timely provide the title evidence did not excuse Gartner's failure to timely close on the option transaction. The court therefore correctly determined that Gartner was not entitled to specific performance of its option to purchase the Property.

## II. Gartner's right to exercise the option a second time

¶39 Gartner next argues that even if the circuit court properly rejected its claim for specific performance of the option to purchase, the court erred by concluding Gartner had no right to exercise the option a second time on February 24, 2017. Gartner asserts that no Wisconsin court has yet addressed the "important contractual issue as to whether options are singular in nature" or may be exercised multiple times. Citing case law from other jurisdictions, Gartner urges us to adopt a rule that "[a]bsent express contract language to the contrary, multiple exercises of an option should be allowed in conformance with the terms of the agreement." At a minimum, Gartner contends we should hold that "the validity of each attempt or exercise of an option should be examined." Gartner further argues that there would be "major negative implications" if we held that options are singular in nature, although it does not specify what those negative implications might be.

¶40     In response, HBP argues that the foreign cases Gartner cites are distinguishable.  HBP instead directs us to a New York case, where the court rejected a tenant's second attempt to exercise an option to purchase.

¶41     The foreign cases that the parties rely on are not helpful, as they do not address the specific contractual language at issue in this case.  We therefore decline to adopt a bright-line rule, based on those cases, that options to purchase either can or cannot be exercised multiple times.  Instead, we examine the language of the lease to determine whether it demonstrates that the parties intended to allow Gartner to exercise its option to purchase more than once.

¶42     Gartner emphasizes that the lease grants it a one-year period in which to exercise the option to purchase.  Gartner further observes that the lease states it may exercise the option "at any time" during that one-year option period.  Gartner argues the plain meaning of "at any time" is "whenever" or "on any occasion."  Gartner therefore contends the lease's use of the phrase "at any time" shows that the parties intended to permit Gartner to exercise the option more than once, as long as it did so during the option period.

¶43     HBP, in turn, contends the plain language of the lease shows that the parties did not intend to allow Gartner to exercise the option more than once.  HBP notes that all references to the term "option" in the lease "are in the singular, not plural."  HBP asserts that if the parties had intended to permit multiple exercises of the option, they would have referred to the option in the plural—e.g., "options" or "options to purchase"—or would have included language expressly stating that Gartner could exercise the option more than once.

¶44     HBP also emphasizes that Article VIII of the lease, which contains the option, provides:

> IN THE EVENT TENANT ELECTS TO EXERCISE ITS OPTION IN ACCORDANCE WITH THE FOREGOING PROVISIONS, THE FOLLOWING ADDITIONAL TERMS AND CONDITIONS OF THIS ARTICLE VII[I], SHALL CONSTITUTE THE PURCHASE AGREEMENT BY AND BETWEEN LANDLORD AND TENANT FOR THE SALE AND PURCHASE OF THE OPTION PROPERTY.

HBP argues this language "unambiguously states … that if [Gartner] elects to exercise the Option, then Sections 8.7 through 8.15 constitute the terms of the Purchase Agreement." HBP therefore contends that on the date Gartner first exercised the option, the option merged into the purchase agreement and "ceased to exist." Accordingly, HBP argues Gartner could not possibly have exercised the option a second time.

¶45 We conclude the lease is ambiguous as to whether Gartner may exercise the option to purchase only once, or multiple times. In other words, the lease's plain language is fairly susceptible to the interpretations advanced by both Gartner and HBP. *See Tufail*, 348 Wis. 2d 631, ¶27. We therefore look to extrinsic evidence to determine whether the parties intended to allow multiple exercises of the option. *See id.*

¶46 As noted above, Lynskey—who was Gartner's real estate agent—hired Heeren—a real estate attorney—to draft the lease. At trial, Heeren testified that when he drafted the lease, he intended the option to merge into the purchase agreement after Gartner exercised the option. Once that merger occurred, HBP is correct that the option ceased to exist and thus could not be exercised a second time. We therefore agree with HBP that Heeren's testimony shows the parties intended the option to be exercised only once. In addition, as noted above, ambiguous contract language is construed against the drafter. *Seitzinger*, 270 Wis. 2d 1, ¶22.

Here, the lease was drafted by an attorney hired by Gartner's real estate agent, and we therefore construe the ambiguous language against Gartner. As such, the circuit court properly determined that Gartner had no right to exercise the option a second time in February 2017.[5]

### III. Gregory Gartner's entitlement to the $200,000 payment

¶47 The circuit court determined that Gregory Gartner was not entitled to recover the $200,000 payment discussed in § 8.4 of the lease. The court reasoned: "Section 8.4 is entitled 'Failure to Exercise Option; Payment from Landlord.' This is not a case where the tenant failed to exercise the option thus obligating [HBP] to the $200,000 payment. Rather, Plaintiff did exercise the option but failed to close on the resulting Purchase Agreement, as required."

¶48 Gartner argues the circuit court erroneously interpreted § 8.4. In the alternative, Gartner argues the court had no authority to render a declaratory ruling that adversely affected Gregory Gartner's rights, as he is not a party to this case.

¶49 We need not determine whether the circuit court erroneously interpreted § 8.4 because we agree with Gartner's second contention.[6] WISCONSIN STAT. § 806.04(11) provides: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the

---

[5] Gartner cites Wisconsin case law for the proposition that "the doctrine of merger does not apply to this Option" because it "only applies where a deed is issued and thereby the terms of a purchase contract do not survive and are 'merged' into the deed." Regardless of what the doctrine of merger provides, as a general matter, Heeren specifically testified that when drafting the lease, he intended the option to merge into the purchase agreement after Gartner exercised the option. The cases Gartner cites are thus inapplicable here.

[6] *See* ***Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

18

declaration, and no declaration may prejudice the right of persons not parties to the proceeding." Gregory Gartner, individually, has never been a party to this case. As such, § 806.04(11) prevented the court from issuing a declaratory ruling that prejudiced his rights. We therefore reverse that portion of the court's judgment declaring that Gregory Gartner is not entitled to the $200,000 payment described in § 8.4 of the lease.[7]

## IV. The circuit court's award of maintenance expenses to HBP

¶50    Finally, Gartner argues the circuit court erred by ordering it to reimburse HBP for $8,655.12 in maintenance expenses that HBP paid between January 1, 2016, and the date of trial. The lease between HBP and Gartner required HBP to pay certain maintenance expenses. The triple-net sublease between Gartner and Studios, however, stated that Studios was responsible for all maintenance expenses associated with the Property beginning on January 1, 2016. Because of Studios' obligation to pay maintenance expenses under the sublease, the court determined Gartner should be required to reimburse HBP for the maintenance expenses it had paid after January 1, 2016.

¶51    Gartner argues the circuit court improperly reformed its lease with HBP into a triple-net lease based on the triple-net sublease that existed between Gartner and Studios. Gartner asserts that HBP never pled a claim for reformation

---

[7] To be clear, we offer no opinion on the ultimate issue of whether Gregory Gartner is actually entitled to the $200,000 payment. We simply hold that because Gregory Gartner is not a party to this case, the circuit court erred by issuing a declaratory ruling that prejudiced his rights.

In addition, we observe that a potential issue exists regarding whether Gartner has standing on appeal to challenge the circuit court's ruling regarding Gregory Gartner's entitlement to the $200,000 payment. The parties did not raise any arguments regarding that issue, however, and we will not abandon our neutrality to develop such arguments for them. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

of the lease and, in any event, HBP failed to prove the elements of a reformation claim. In response, HBP does not argue that the court properly awarded it maintenance expenses under a contract reformation theory. Instead, HBP argues the court properly awarded those damages because Gartner was unjustly enriched when HBP paid for maintenance expenses that were "technically owed and payable by Studios."

¶52 In its reply brief, Gartner asserts that HBP never pled or otherwise raised an unjust enrichment claim in the circuit court. Gartner further observes that a plaintiff must prove three elements to establish unjust enrichment, and the circuit court "[made] no finding that HBP ever raised this issue or proved any of these elements." Gartner therefore argues the court's award of maintenance expenses to HBP cannot be affirmed on an unjust enrichment theory.

¶53 We agree with Gartner's analysis. HBP did not plead a counterclaim for unjust enrichment. On appeal, HBP does not cite any portion of the record showing that it raised an unjust enrichment claim at any other point during the circuit court proceedings. The court did not make any findings regarding the three elements HBP would have been required to prove to succeed on an unjust enrichment claim. Moreover, HBP does not develop any argument on appeal that those elements were satisfied. We therefore reject HBP's assertion that the court's award of maintenance expenses was proper under an unjust enrichment theory.

¶54 HBP does not raise any other legal theory that would justify the circuit court's award of maintenance expenses. Although the triple-net sublease between Gartner and Studios required Studios to pay all maintenance expenses for the Property beginning on January 1, 2016, HBP was not a party to that sublease. HBP was not entitled to be reimbursed for the maintenance expenses it was required to

pay under its lease with Gartner simply because Gartner had entered into a sublease requiring Studios to pay maintenance expenses. We therefore reverse the court's award to HBP of $8,655.12 in maintenance expenses.

¶55 No WIS. STAT. RULE 809.25 costs are awarded to either party.

*By the Court.*—Judgment affirmed in part; reversed in part.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.