COURT OF APPEALS
DECISION
DATED AND FILED

April 30, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2271**

Cir. Ct. No. **2016CV251**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

MATTHEW J. MURPHY,

    PLAINTIFF-RESPONDENT-CROSS-APPELLANT,

V.

COLUMBUS MCKINNON CORPORATION,

    DEFENDANT-APPELLANT-CROSS-RESPONDENT.

---

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Sauk County: WENDY J.N. KLICKO, Judge. *Affirmed in part, reversed in part and cause remanded with directions.*

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM.   After Matthew Murphy was injured in a workplace accident while using lifting tongs manufactured by Columbus McKinnon Corporation (CMC), Murphy brought a common law claim of negligent design and a strict product liability claim for a design defect against CMC.  At trial, after the close of evidence, CMC moved for a directed verdict on Murphy's negligence claim, arguing that there was insufficient evidence to support a verdict on that claim because Murphy did not present evidence sufficient to show the elements of duty or breach.  The circuit court denied CMC's motion.  The jury rejected Murphy's strict product liability claim but found in Murphy's favor on the negligence claim.  CMC appeals the judgment entered in favor of Murphy, renewing the arguments that it made in the circuit court.  We conclude that there was insufficient evidence to support a negligence verdict and we therefore reverse the judgment against CMC and remand with directions.

¶2 Murphy cross-appeals the judgment on various grounds.  Because we conclude that there was insufficient evidence to support the negligence verdict, we need address only one of the arguments that Murphy raises in his cross-appeal: that the jury instructions regarding the strict product liability claim were inadequate.[1]  We reject this argument both because Murphy forfeited it by failing to raise it in the circuit court and because it is undeveloped.

---

[1] The additional arguments that Murphy raises in his cross-appeal that we do not address are that he is entitled to prejudgment interest and double costs under WIS. STAT. § 807.01 (2023-24), and that he is entitled to additur under WIS. STAT. § 805.15(6) (2023-24) because the verdict was inadequate in that the jury did not award Murphy damages for future loss of earning capacity. All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

## BACKGROUND

¶3      This case has already been before this court and our supreme court, in a prior appeal from an order granting summary judgment in favor of CMC. *See Murphy v. Columbus McKinnon Corp. (Murphy I)*, 2021 WI App 61, 399 Wis. 2d 18, 963 N.W.2d 837; *Murphy v. Columbus McKinnon Corp. (Murphy II)*, 2022 WI 109, 405 Wis. 2d 157, 982 N.W.2d 898 (affirming the court of appeals, in part on different grounds).

¶4      Murphy was working as a utility line technician for Wisconsin Power & Light Company when he was injured in a workplace accident. A utility pole fell on him as he was loading the pole onto a trailer. To lift the pole, Murphy used a truck-mounted boom and winch, and "Dixie" style tongs to attach the pole to the winch line.[2] Dixie tongs resemble old-fashioned ice tongs; have two pointed prongs, one of which attaches to each side of the circumference of a pole; and close on the pole like a pair of scissors as the pole is lifted. The Dixie tongs that Murphy used were manufactured by CMC.

¶5      Murphy sued CMC, alleging both a common law claim of negligent design and a strict product liability claim for a design defect under WIS. STAT. § 895.047(1). In support of both claims, Murphy argued that a different style of tongs used to lift utility poles, called Hogg & Davis tongs, would have provided CMC with a safer alternative design.[3] Hogg & Davis tongs, unlike Dixie tongs, feature multiple teeth on each side.

---

[2] "Dixie" is a trade name under which this design of tongs has been sold.

[3] Hogg & Davis tongs are named after the company that manufactures them.

¶6  CMC filed a motion for summary judgment on both the negligent design claim and the strict product liability claim, which the circuit court granted.[4] Murphy appealed, we reversed the circuit court, and our supreme court affirmed that reversal, in part on different grounds. *Murphy I*, 399 Wis. 2d 18; *Murphy II*, 405 Wis. 2d 157. Our supreme court concluded that summary judgment was not appropriate because there were genuine disputes of material fact on both claims, and remanded to the circuit court for further proceedings. *Murphy II*, 405 Wis. 2d 157, ¶52. Specifically, regarding the negligent design claim, the court concluded that there were material disputed facts on the issue of contributory negligence, *i.e.*, where Murphy was standing and where his hands were when the pole fell, how high Murphy lifted the pole, where Murphy attached the tongs on the pole, and whether Murphy conducted a test lift of the pole. *Id.*, ¶¶49-50. Regarding the strict product liability claim, the court concluded that there were disputed material facts regarding whether the foreseeable risks of the Dixie tongs could have been reduced or avoided by the adoption of a reasonable alternative design, such as the Hogg & Davis design; whether CMC's omission of this reasonable alternative design rendered the Dixie tongs unreasonably dangerous; whether an ordinary consumer of Dixie tongs would have contemplated the dangers posed by the Dixie tongs' unsafe design; and whether the defective design was a cause of Murphy's injuries. *Id.*, ¶¶43-47.

¶7  The case proceeded to trial. Relevant to our analysis here, at trial, Murphy called as an expert witness John DeRosia, a consulting engineer, whose testimony included his opinion that the design of the Hogg & Davis tongs was

---

[4] The court initially denied CMC's motion, but ultimately granted it after reconsidering the motion sua sponte.

safer than the Dixie tongs' design.  Murphy also called Troy Raines, a corporate representative for CMC and the product manager and project engineering manager for the division of CMC that produces Dixie tongs, who testified about the Dixie tongs' design.  CMC called an expert witness, John Green, who testified that the design of Hogg & Davis tongs was not safer than that of Dixie tongs and that the Dixie tongs were not defectively designed.  Additionally, three witnesses testified who were Wisconsin Power & Light Company employees at the time of the accident.  Their testimony included the relevant training that linemen receive, the relevant safety policies and procedures, a description of how poles were lifted using pole tongs, and information regarding Wisconsin Power & Light Company's investigation of the accident.

¶8      At the close of evidence, CMC moved for a directed verdict on Murphy's common law claim of negligent design.  Specifically, CMC argued that Murphy failed to present evidence showing two necessary elements of a negligence claim: duty and breach.  Pertinent here, CMC argued that Murphy failed to present any evidence that CMC knew or should have known that the design of the Dixie tongs could cause injury.  The circuit court denied CMC's motion, describing the issue as a "close call."

¶9      The jury rejected Murphy's strict product liability claim based on its finding that the Dixie tongs were not unreasonably dangerous.  On the negligent design claim, the jury found that CMC was negligent.  The jury allocated 70% fault to CMC and 30% fault to Wisconsin Power & Light Company, and awarded Murphy approximately $4 million in damages.

¶10      CMC filed a postverdict motion to set aside the portion of the verdict finding that CMC was negligent, renewing the arguments that it made in its earlier

motion for a directed verdict. In response, Murphy filed a request for entry of the verdict, arguing that, pursuant to WIS. STAT. § 805.16(3), the postverdict motion should be deemed denied because the circuit court did not rule on it within 90 days of the verdict being rendered. The court agreed with Murphy, deeming the motion denied.

¶11 CMC appeals the judgment entered by the circuit court in favor of Murphy following the trial. Murphy cross-appeals the judgment.

## DISCUSSION

¶12 CMC argues that the circuit court erred in denying its motion for a directed verdict on the negligent design claim because Murphy failed to present evidence on the necessary elements of duty and breach. Pertinent here, CMC argues that Murphy presented no evidence that CMC knew or should have known that failing to adopt the Hogg & Davis design posed a foreseeable risk of injury. For the reasons we explain below, we agree.[5]

¶13 In his cross-appeal, Murphy argues that the jury instructions for the strict product liability claim were inadequate. We reject Murphy's argument both because Murphy forfeited it by failing to raise it in the circuit court and because the argument is undeveloped. Before addressing these issues, we begin by addressing, and rejecting, Murphy's assertion that CMC is not entitled to raise the

---

[5] Because we agree with CMC's argument on this point and reverse on this basis, we need not address the other arguments that CMC raises on appeal. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) (we need not address every issue when one is dispositive). These arguments are that Murphy presented no evidence of "negligent acts" by CMC, there was no credible evidence to support the jury's allocation of zero fault to Murphy, and that the circuit court erroneously admitted a spreadsheet and compilation of Murphy's medical costs that CMC argues lacked foundation.

issues that it does on appeal because CMC raised these issues in a postverdict motion that Murphy asserts was denied as untimely.

## I. Postverdict Motion

¶14 As a threshold matter, Murphy appears to argue that CMC is not entitled to raise the issues that it does on appeal because CMC's postverdict motion raising these issues was deemed denied pursuant to WIS. STAT. § 805.16(3). *See* § 805.16(3) ("If within 90 days after the verdict is rendered the [circuit] court does not decide a motion after verdict on the record or the judge … does not sign an order deciding the motion, the motion is considered denied and judgment shall be entered on the verdict."). Murphy's argument is difficult to understand, but he appears to argue that CMC's postverdict motion was "untimely" because it did not allow the court to decide the motion within 90 days of the verdict being rendered.

¶15 We reject Murphy's argument because it is undeveloped. To start, we note that the subject of CMC's appeal is the circuit court's denial of CMC's motion for a directed verdict, which Murphy does not dispute is properly before this court. Although CMC's arguments underlying its motion for a directed verdict were the same as those underlying its postverdict motion, Murphy does not explain how the timeliness of CMC's postverdict motion could have any effect on our ability to review the denial of CMC's motion for a directed verdict.

¶16 Moreover, Murphy fails to explain how CMC's postverdict motion was untimely. The verdict was rendered on April 23, 2024, and although WIS. STAT. § 805.16(1) ordinarily requires that motions after verdict be filed within 20 days after the verdict is rendered, the parties agreed on multiple occasions to extend that deadline—not just for CMC's postverdict motion, but for Murphy's

postverdict motion as well—which ultimately resulted in a deadline of July 15, 2024. CMC timely filed its postverdict motion on that date. By the circuit court's count, that was 83 days after the verdict was rendered, which left the court approximately one week to rule on the motion if the court was to comply with the 90-day deadline in § 805.16(3). The court agreed with Murphy's position, set forth in Murphy's July 24, 2024 request for entry of the verdict, that because 90 days had passed, the postverdict motion was deemed denied by operation of § 805.16(3). Murphy fails to explain how this sequence of events rendered CMC's postverdict motion untimely or precludes this court from considering the issues CMC raises on appeal. We therefore reject as undeveloped Murphy's argument that CMC is not entitled to raise its arguments on appeal. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (explaining that this court need not consider undeveloped arguments).[6]

## II. *Motion for Directed Verdict: Negligent Design*

¶17 Turning to the merits of CMC's appeal, CMC argues that the circuit court erred in denying its motion for a directed verdict on Murphy's negligent design claim because there was no evidence to support the elements of duty and breach. When reviewing a denial of a motion for a directed verdict, we examine "whether, considering all credible evidence and reasonable inferences therefrom in

---

[6] The only case that Murphy cites in support of his argument—*Hartford Insurance Co. v. Wales*, 138 Wis. 2d 508, 406 N.W.2d 426 (1987)—supports the proposition that issues not timely raised in postverdict motions within 20 days of the verdict being rendered may not be appealed as of right. But *Hartford* does not support Murphy's argument here, given the parties' agreement to extend the statutory deadline. Moreover, to the extent that Murphy means to argue that CMC cannot raise the issues that it does on appeal as of right because CMC's postverdict motions were denied under WIS. STAT. § 805.16(3), that argument is similarly undeveloped and unsupported by legal authority.

the light most favorable to the party against whom the motion was made, there is any credible evidence to sustain a finding in favor of that party." ***Re/Max Realty 100 v. Basso***, 2003 WI App 146, ¶7, 266 Wis. 2d 224, 667 N.W.2d 857. If there is any credible evidence to support a claim, the claim must be submitted to the jury. ***Id.*** "[A] verdict should be directed only where there is no conflicting evidence as to any material issue and the evidence permits only one reasonable inference or conclusion." ***Millonig v. Bakken***, 112 Wis. 2d 445, 451, 334 N.W.2d 80 (1983); *see also* WIS. STAT. § 805.14(1) ("No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."); § 805.14(4) ("In trials to the jury, at the close of all evidence, any party may challenge the sufficiency of the evidence as a matter of law by moving for directed verdict or dismissal or by moving the court to find as a matter of law upon any claim or defense or upon any element or ground thereof.").

¶18 Our supreme court explained in the prior appeal of this case that, in order for Murphy to prevail on his negligent design claim, Murphy needed to establish "that CMC owed him a duty, that the Dixie tongs' design did not meet the standard of care that duty required, and therefore CMC breached its duty, which caused his injuries." ***Murphy II***, 405 Wis. 2d 157, ¶48; *see also* ***Hoida, Inc. v. M & I Midstate Bank***, 2006 WI 69, ¶23, 291 Wis. 2d 283, 717 N.W.2d 17 (listing four elements of a negligence claim: "'(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's

9

injury, and (4) actual loss or damage resulting from the [breach].'" (alteration in original; quoted source omitted)). CMC argues that Murphy failed to establish the elements of duty and breach. Pertinent here, CMC argues that Murphy did not present evidence showing that CMC knew or should have known that failing to adopt the Hogg & Davis design posed a foreseeable risk of injury. We agree.

¶19 In order to satisfy the elements of duty and breach for a negligence claim, the plaintiff must show foreseeability: *i.e.*, that the defendant knew or should have known that the defendant's conduct posed a foreseeable risk of injury. *See, e.g.*, *Morden v. Continental AG*, 2000 WI 51, ¶¶46, 53, 235 Wis. 2d 325, 611 N.W.2d 659; *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶¶19-20, 318 Wis. 2d 622, 768 N.W.2d 568. Regarding the element of duty, our supreme court has explained, "The duty of care of a defendant is established when we can state that it was foreseeable that the defendant's act or omission could harm or injure another person. The first element, duty of care, therefore pivots on foreseeability." *Morden*, 235 Wis. 2d 325, ¶46 (citation omitted). In other words, a plaintiff must "show that 'some injury could reasonably have been foreseen.'" *Id.*, ¶47 (quoting *Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d 85, 97, 280 N.W.2d 280 (1979)).

¶20 For a negligent design claim specifically, "the test of foreseeability expects manufacturers to 'anticipate the environment which is normal for the use of [its] product.'" *Morden*, 235 Wis. 2d 325, ¶47 (quoting *Tanner v. Shoupe*, 228 Wis. 2d 357, 367, 596 N.W.2d 805 (Ct. App. 1999)). The plaintiff must show "that the [defendant], in the exercise of ordinary care, should have foreseen that his design … would be unreasonably dangerous to others." *Greiten v. LaDow*, 70

Wis. 2d 589, 602, 235 N.W.2d 677 (1975).[7]  Accordingly, in determining whether there was sufficient evidence to show the element of duty of care, we "must determine whether there was any credible evidence or inference therefrom to support the finding that [the defendant] knew or, in the exercise of ordinary care, should have known, that the [product's design] posed a foreseeable risk of injury." *Morden*, 235 Wis. 2d 325, ¶48.

¶21     Wisconsin courts have also discussed the foreseeability requirement when examining the element of breach.   To satisfy the element of breach, a plaintiff must prove that the defendant failed to exercise ordinary care.  *Id.*, ¶53. A defendant "'fails to exercise ordinary care'" when the defendant "'does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject the person of another to an unreasonable risk of injury.'"[8]   *Id.* (quoting *State v.*

---

[7]   In *Greiten v. LaDow*, 70 Wis. 2d 589, 235 N.W.2d 677 (1975), what was labelled as Justice Heffernan's "concurrence" was in fact the court's majority opinion because it garnered a majority of votes.  *See Howes v. Deere & Co.*, 71 Wis. 2d 268, 274, 238 N.W.2d 76 (1976).

[8]   Consistent with the case law regarding the elements of duty and breach, the jury was instructed using the pattern jury instructions.  Regarding duty, the jury was instructed, "It is the duty of a manufacturer to exercise ordinary care in the design, construction, and manufacture of its product so as to render the product safe for its intended use …."  *See* WIS JI—CIVIL 3240 (negligence: duty of manufacturer).  Regarding breach, the jury was instructed:

> A person is negligent when he fails to exercise ordinary care.  Ordinary care is the care which a reasonable person would use in similar circumstances.  A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

*See* WIS JI—CIVIL 1005 (negligence: defined).   On appeal, neither party challenges these instructions.

***Bodoh***, 226 Wis. 2d 718, 732, 595 N.W.2d 330 (1999)). This standard applies to product manufacturers. ***Morden***, 235 Wis. 2d 325, ¶54. "[A] showing by a plaintiff that better methods of manufacture exist does not conclusively prove that a defendant created the product with a lack of ordinary care"; instead, "negligence usually attaches only when the plaintiff can prove that the defendant selected the more dangerous route of manufacture knowing that it was unsafe." ***Id.***, ¶55.[9]

¶22    A negligent design claim's focus on what the defendant knew or should have known sets it apart from a strict product liability claim. "Strict liability requires a showing that the condition of the product was unreasonably

---

[9] There is some question under our case law whether the foreseeability inquiry in a negligence analysis is a requirement to establish a duty, a breach, or both. *See* ***Morden v. Continental AG***, 2000 WI 51, ¶46, 235 Wis. 2d 325, 611 N.W.2d 659 ("The first element, duty of care, … pivots on foreseeability."); *but see* ***id.***, ¶53 (stating that a defendant breaches the duty to exercise ordinary care when the defendant "does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject the person of another to an unreasonable risk of injury"); ***Behrendt v. Gulf Underwriters Ins. Co.***, 2009 WI 71, ¶¶19-20, 318 Wis. 2d 622, 768 N.W.2d 568 ("'A lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination. Rather it is a determination that no reasonable person could find that the defendant has breached the duty of reasonable care.'" (emphasis omitted) (quoting with approval RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 7(a) (Proposed Final Draft No. 1, 2005))); *see also* ***Tesar v. Anderson***, 2010 WI App 116, ¶11 n.13, 329 Wis. 2d 240, 789 N.W.2d 351 (characterizing ***Behrendt*** as an outlier on this topic and explaining why).

For purposes of resolving this appeal, it does not matter which of the first two negligence elements the foreseeability inquiry falls under; either way, the result here is the same. However, in acknowledgement of the case law supporting a foreseeability requirement for both duty and breach, we conclude that Murphy failed to present evidence showing that either element was met.

We further observe that, in addressing foreseeability, CMC focuses on the element of duty rather than breach. However, CMC also relies heavily on language from ***Morden*** in which the court discusses breach. *See* ***Morden***, 235 Wis. 2d 325, ¶55 ("[A] showing by a plaintiff that better methods of manufacture exist does not conclusively prove that a defendant created the product with a lack of ordinary care"; instead, "negligence usually attaches only when the plaintiff can prove that the defendant selected the more dangerous route of manufacture knowing that it was unsafe."). Thus, in characterizing CMC's argument on foreseeability, we do not distinguish whether CMC's argument on foreseeability addresses duty, breach, or both.

dangerous or otherwise posed an extraordinary form of danger"; in contrast, "[t]he principles of negligence law hinge on a defendant's conduct, and therefore the plaintiff must show that the defendant was at fault." *Id.*, ¶¶43, 44. That a common law claim of negligent design focuses on the defendant's conduct is consistent with the need to prove "that the defendant selected the more dangerous route of manufacture knowing that it was unsafe." *Id.*, ¶55.

¶23 Here, there was insufficient evidence to support the jury's negligence verdict because there was no evidence showing that CMC knew or should have known that the Dixie tongs' design posed a foreseeable risk of injury. To start, there was no evidence presented at trial that CMC knew that the Dixie tongs' design posed a foreseeable risk of injury. In fact, as CMC notes, CMC's corporate representative testified that: CMC tracks complaints and reports of injury that are made regarding its products; CMC had been manufacturing the Dixie tongs with the same basic design for more than 130 years; and CMC had never received, other than in this case, a complaint or report that a load had ever dropped from a set of Dixie tongs, or that they had otherwise caused injury. CMC's corporate representative additionally testified that every pair of Dixie tongs that CMC manufactured was "proof test[ed]" by being subjected to twice the rated working load. On appeal, Murphy does not dispute that he did not present any evidence at trial to rebut the foregoing evidence.

¶24 Nor was there evidence presented at trial showing that CMC *should have known* that the Dixie tongs' design posed a foreseeable risk of injury. As stated, Green, CMC's expert, testified that the design of Hogg & Davis tongs was not safer than that of the Dixie tongs and that the Dixie tongs were not defectively designed. In contrast, Murphy's expert, DeRosia, opined that the design of the Hogg & Davis tongs was safer than that of the Dixie tongs. Specifically, he

13

testified that the Dixie tongs' design is "not safe," "dangerous" and "defective" because the tongs have only two teeth (as opposed to the Hogg & Davis tongs' six teeth), which means that if one of the Dixie tongs' teeth fails to grip the pole, the pole will fall. However, he did not testify that the design of the Dixie tongs made it foreseeable that one of the Dixie tongs' teeth could fail to grip the pole. And although DeRosia testified that the Dixie tongs exerted less inward clamping force than the Hogg & Davis tongs, he also testified that he had not conducted any testing to determine what constitutes sufficient clamping force because "Murphy had done our testing for us." DeRosia agreed that because the pole that injured Murphy dropped from a set of Dixie tongs, DeRosia "didn't have to go and hook these tongs up and drop a pole in order to prove they would drop a pole." But the mere fact that the pole did drop from the tongs onto Murphy is not sufficient to show that it was foreseeable that this would occur as a result of the design of the tongs.

¶25 Further, DeRosia's general opinion that the Dixie tongs was not as safe as the Hogg & Davis tongs was not enough to establish that the Dixie tongs' design posed a foreseeable risk of injury. "It is boilerplate law that, merely because a product … is not as safe as possible, because there are better methods of manufacture … does not lead to the conclusion that the method employed was undertaken with a lack of ordinary care or the product was defective." *Greiten*, 70 Wis. 2d at 602. This proposition was reiterated more recently in *Morden*, also a negligent design case, in which our supreme court stated, "To date, our courts have held that a showing by a plaintiff that better methods of manufacture exist does not conclusively prove that a defendant created the product with a lack of ordinary care." *Morden*, 235 Wis. 2d 325, ¶55. Instead, as stated, "negligence

usually attaches only when the plaintiff can prove that the defendant selected the more dangerous route of manufacture knowing that it was unsafe." *Id.*

¶26    In arguing that there was sufficient evidence that the Dixie tongs' design posed a foreseeable risk of injury, Murphy relies on the testimony of Kevin Severson, a lead safety consultant for Wisconsin Power & Light Company. In particular, Murphy argues that the jury could conclude that it was common for poles to drop from Dixie tongs because, according to Murphy, Severson testified that he had seen poles drop from Dixie tongs more than a dozen times. However, Murphy does not accurately portray Severson's testimony. In fact, Severson testified that he had seen poles drop from both Dixie tongs and Hogg & Davis tongs more than a dozen times. Severson went on to testify that the poles he had seen drop were dropped during "test lifts." A test lift is done by lifting the pole a short distance off the ground in order to determine whether the tongs are properly secured to the pole and placed in the correct spot along the pole's length before lifting the pole any higher. Severson testified that the poles that he saw drop during test lifts were dropped because the tongs had not been properly placed on the pole. Severson's testimony is therefore not sufficient to show that CMC should have known that the Dixie tongs' design posed a foreseeable risk of injury.

¶27    Besides Severson's testimony, Murphy does not identify any other evidence from which the jury could have found that CMC should have known that the Dixie tongs' design posed a risk of injury; nor do we discern any such evidence in our review of the trial record. For example, the other Wisconsin Power & Light Company employees did not testify that they had ever seen a pole drop from a set of Dixie tongs.

¶28 In arguing that there was sufficient evidence to support a negligence verdict, Murphy also relies on *Morden*. There, after the rear tires of the plaintiff's vehicle blew out and caused an accident, the plaintiff brought strict product liability and negligent design claims against the tire manufacturer. *Id.*, ¶¶3, 19, 28. A jury found that the tire manufacturer was "negligent in the design or manufacture of the tires and concluded that this negligence was a cause of the accident." *Id.*, ¶31. Our supreme court concluded that there was sufficient evidence to support the jury's verdict, even though the record was silent about whether the tire manufacturer conducted tests regarding the design of the tire. *Id.*, ¶57. Relying on this, Murphy suggests that here the jury could have determined that CMC was negligent by not incorporating the features from the Hogg & Davis tongs into the Dixie tongs that allegedly would have reduced the risk of injuries.

¶29 Murphy's reliance on *Morden* is unavailing. As previously noted, in *Morden*, our supreme court stated that when a plaintiff relies on the availability of a better alternative design to establish negligence, "negligence usually attaches only when the plaintiff can prove that the defendant selected the more dangerous route of manufacture knowing that it was unsafe." *Id.*, ¶55. The *Morden* court also stated, "Evidence of 'the custom in the industry (what the industry was doing) and the state of the art (what the industry feasibly could have done) at the time' of the design or manufacture is relevant to the jury's determination of negligence." *Id.*, ¶56 (quoted source omitted). Consistent with these statements, the *Morden* court concluded that there was sufficient evidence in that case to support the negligence verdict because the plaintiff had presented evidence that "illustrate[d] industry knowledge and address[ed] what feasibly could have been done at the time of the tire's manufacture." *Id.*, ¶57. The *Morden* court reasoned that "[f]rom

16

this evidence, the jury could have reasoned that [the tire manufacturer] should have chosen an alternative design to prevent the harm caused." *Id.*, ¶58.

¶30 Here, in contrast, although Murphy presented evidence purporting to show that the Hogg & Davis tongs were safer, Murphy did not present any evidence regarding what CMC knew or should have known at the time of the Dixie tongs' manufacture or design, either by establishing industry knowledge or custom, or otherwise. Indeed, as CMC argues, and Murphy does not dispute, Murphy did not present evidence showing that Hogg & Davis tongs even existed in 2000 when the Dixie tongs that Murphy was using were manufactured. *See also Carlson v. Triton Indus., Inc.*, 605 F. Supp. 3d 1124, 1132 (W.D. Wis. 2022) ("[A]t the time of manufacture in 1990, plaintiff has produced *zero* evidence that [the defendant manufacturer] knew or should have known that its railing design was a pinch-point hazard, which is an essential element of negligent design.").

¶31 Murphy additionally argues that, because of how lifting tongs are used, CMC should have known that if a pole dropped from a set of tongs, injury was reasonably foreseeable. However, assuming without deciding that this is the case, it would be only part of the analysis and is not the complete picture. Murphy was required to do more than show that the injury was reasonably foreseeable if the Dixie tongs dropped a pole: he was also required to show that there was a foreseeable risk that a pole would drop from a set of Dixie tongs because of their design. *See Morden*, 235 Wis. 2d 325, ¶47. As stated, Murphy did not do so.

¶32    In sum, we conclude that there was insufficient evidence to support a negligence verdict and that the circuit court therefore erred in denying CMC's motion for a directed verdict on this claim.[10]

### III. *Murphy's Cross-Appeal: Strict Product Liability*

¶33    Turning to Murphy's cross-appeal, the one argument that we must address is easily disposed of.  As stated, the jury rejected Murphy's strict product liability claim, concluding that Murphy had not established the second element for strict product liability—*i.e.*, that the Dixie tongs were "unreasonably dangerous." Murphy challenges the following jury instruction for that element: "The defective condition rendered the product unreasonably dangerous to persons or property. This means the product design was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics."  *See* WIS JI—CIVIL 3260.1 (product liability: WIS. STAT. § 895.047).  Specifically, Murphy argues that these instructions "were not understandable to the ordinary juror."  We

---

[10] We observe that in resolving the earlier appeal in this case, our supreme court, when discussing whether summary judgment was properly granted on Murphy's strict product liability claim, stated the following: "Murphy provided evidence that the Dixie tongs, by their defective design of a single attachment point on each side of the pole, presented foreseeable risks that a pole could fall out of the tongs' grasp." *Murphy v. Columbus McKinnon Corp. (Murphy II)*, 2022 WI 109, ¶44, 405 Wis. 2d 157, 982 N.W.2d 898.  The court's statement regarding the strict product liability claim was based on DeRosia's opinion that the Hogg & Davis design was a safer alternative design because it uses more than two points of contact to grip poles. *Id.*  DeRosia's opinions on this topic that our supreme court relied on are generally consistent with DeRosia's testimony at trial.  *See id.*  However, Murphy does not argue that the court's statement on foreseeability when discussing Murphy's strict product liability claim have any bearing on the foreseeability issue as it pertains to his negligence claim.  Therefore, we do not address this issue further.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments.").

reject this argument both because Murphy forfeited it by failing to raise it in the circuit court, and because it is undeveloped.

¶34    First, Murphy forfeited this argument.  WIS. STAT. § 805.13(3) states:

> At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury.  At the conference, … counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions.  The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit.  Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record.  Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.

At the jury instruction conference in the circuit court, Murphy did not object to this language.  In fact, as CMC points out, Murphy not only failed to object, but he affirmatively proposed and agreed to the use of the pattern jury instruction that includes the language he now challenges.  Murphy therefore forfeited his right to challenge this language on appeal, and we reject his argument on that basis.  *See LaCombe v. Aurora Med. Grp., Inc.*, 2004 WI App 119, ¶5, 274 Wis. 2d 771, 683 N.W.2d 532 ("Pursuant to WIS. STAT. § 805.13(3) (2001-02), the failure to object at the jury instruction or verdict conferences, 'constitutes a waiver of any error in the proposed instructions or verdict.'  We have no power to review waived error of this sort." (citations and footnote omitted)).

¶35    Second, even setting aside the fact that Murphy forfeited his objection to the jury instructions, Murphy's assertion is undeveloped.  Murphy asserts that the instruction "was worded in such a manner that it was too complex

for an ordinary jury to understand," and that a "simplified jury instruction" should have been used. However, Murphy does not explain in what way the jury instruction was too complex or what kind of simplified instruction he asserts should have been used. Nor does he cite any legal authority to support his assertion. Because Murphy's argument is undeveloped, we reject it on this basis as well. *See* ***Pettit***, 171 Wis. 2d at 646.

## CONCLUSION

¶36    For the reasons stated, we reverse the judgment against CMC and remand this matter to the circuit court. On remand, the court shall vacate the judgment, grant CMC's motion for a directed verdict, and enter judgment for CMC dismissing the complaint.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.